IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARLON McDOUGALL, | : |
|     Plaintiff | : |
|     v. | : Case No. 3:23-cv-91-KAP |
| LIEUTENANT TYSON, *et al.*, | : |
|     Defendants | : |

<u>Memorandum Order</u>

      The remaining defendant (GEO Group)'s motion to dismiss, ECF no. 41, is denied. The GEO Group moves to dismiss the complaint because plaintiff has not filed a timely certificate of merit. Pennsylvania's substantive law, which applies in this diversity case, requires that a certificate of merit be filed with or shortly after the filing of a complaint alleging professional negligence. <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258, 264 (3d Cir. 2011)(Rule 1042.3's certificate of merit requirement is applicable to cases in diversity jurisdiction), *limited in* <u>Wilson v. United States</u>, 79 F.4th 312, 318 (3d Cir. 2023)(Rule 1042.3's certificate of merit requirement is not applicable to FTCA claim even where Pennsylvania law determines the manner and extent of liability.)

      However, Rule 1042.3 does not apply here because plaintiff does not allege that "a licensed professional deviated from an acceptable professional standard." What plaintiff alleges happened on April 3, 2023 to make GEO Group liable to him is stated in the complaint, ECF no. 1, and in two declarations, one by plaintiff, one by an eyewitness, filed at ECF no. 39. Plaintiff, who uses a wheelchair, was being transferred from Moshannon Valley Processing Center to the Pike County Correctional Facility. The wheelchair that plaintiff was using at the time belonged at MVPC; the wheelchair plaintiff had been using upon arrival at MVPC was somewhere "in the facility." The van, with other inmates inside, was awaiting departure for an approximately three hours trip. Rather than delaying the van to find plaintiff's wheelchair or transporting plaintiff using a wheelchair-accessible van, plaintiff alleges that Lieutenant Tyson stated "that he did not care where the wheelchair was," and with two other officers attempted a lift and transfer of plaintiff to a seat in the waiting passenger van. In the process, plaintiff says, "they dropped me to the ground and I cried out in pain." Corrections personnel picked plaintiff up, took him back into MVPC, and several hours later transported plaintiff in a wheelchair-accessible van.

      Defendant characterizes plaintiff's claim as one subject to Rule 1042.3 because Pennsylvania "provide[s] an extremely low threshold for professional liability claims," Defendant's Brief at 6, *citing* <u>Ditch v. Waynesboro Hospital</u>, 917 A.2d 317 (Pa. Super. 2007). In <u>Ditch</u>, a stroke patient being transferred from the emergency room to a hospital room fell from the hospital bed because she was not strapped down. The Superior Court

explained that an expert was necessary to establish the standard of care during transport, that is, during the furnishing of health care services by a healthcare provider. I understand defendant's argument: if plaintiff's claim were that defendant is liable due to the decision of a health professional (for example, Nurse Freeland) to transport him using a regular van and not a wheelchair-accessible van, this case would be governed by Ditch. But that is plainly not plaintiff's claim.

In Ditch itself, the Superior Court distinguished professional negligence from other forms of negligence in terms directly applicable to this case, giving as an example Estate of Swift v. Northeastern Hospital of Philadelphia, 690 A.2d 719 (Pa.Super.1997), in which a patient injured in a slip and fall caused by water on the floor was held to present solely a claim of premises liability, not a claim of "hospital malpractice." Similarly, in Medley v. Dynamic Therapy Servs., LLC, No. 2047 EDA 2017, 2018 WL 461511 (Pa.Super. January 17, 2018), the Superior Court held that a plaintiff, who alleged that he was a front-seat passenger being transported to physical therapy in a paratransit vehicle without being restrained or secured to his seat by the driver of the vehicle and who was injured when the driver "slammed on" the brakes after speeding through a stop sign, stated a claim of ordinary negligence, not medical malpractice. The Medley panel agreed that the conduct alleged did not concern the rendering of medical care.

The best short distinction between professional and ordinary negligence I have seen was given by the Michigan Supreme Court in Bryant v. Oakpointe Villa Nursing Center, 684 N.W.2d 864, 871 (Mich. 2004), *quoted with approval in* Grossman v. Barke, 868 A.2d 561, 570 (Pa.Super.2005). To summarize Bryant, professional negligence claims occur only within the course of a professional relationship and raise questions involving professional judgment. If a court examining the claim determines that the relevant acts or omissions occurred within the course of a professional relationship and raise questions of professional judgment beyond the lay factfinder's knowledge and experience, then the requirements of professional negligence actions apply.

Lieutenant Tyson and the corrections officers who dropped plaintiff were not allegedly providing him with health care and had no professional relationship with him. Whether dropping a shackled person is negligence is within the common knowledge and experience of a lay juror. It may be that plaintiff will need an expert to prove causation of some of his injuries (he alleges "four bulging disk[s] in my back" and a reinjured ACL tear) but when that expert must be identified and provide evidence is a matter governed by federal pretrial management rules, not Rule 1042.3.

There is no need to modify the pretrial schedule. The plaintiff is reminded to keep the Clerk informed of his address.

DATE: March 26, 2024

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Marlon McDougall, A# 036708257
508 Waterworks Road
P.O. Box Drawer N
Farmville, VA 23901