IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARLON McDOUGALL,          :
       Plaintiff          :
   v.          : Case No. 3:23-cv-91-KAP
LIEUTENANT TYSON, *et al.*,          :
       Defendants          :

<u>Memorandum Order</u>

     As explained below, defendant Geo Group Inc.'s motion for summary judgment at ECF no. 54 is granted. Plaintiff Marlon McDougall's motion to compel at ECF no. 57 is denied. Plaintiff's motion for summary judgment at ECF no. 58 is denied. Plaintiff's motion styled "Petition … for Motions to be Presided Over" at ECF no. 63 is dismissed as moot. The Clerk shall enter judgment for the remaining defendant and mark this matter closed.

     Plaintiff Marlon McDougall is a national of Guyana admitted to the United States as a lawful permanent resident in 1982. Between 2006 and 2022 McDougall was in custody for criminal offenses in the state of Virginia. Since 2022, McDougall has been in the custody of the Department of Homeland Security pending removal proceedings. McDougall has been housed in a number of facilities operated by Geo Group, and was at the Moshannon Valley Processing Center from around August 5, 2022, until April 2 or 3, 2023. In May 2023, McDougall filed a complaint dated April 20, 2023, ECF no. 1, supplemented by two declarations filed in February 2024 (one by plaintiff, one by an alleged eyewitness) at ECF no. 39, alleging that when McDougall was being transferred from the Moshannon Valley Processing Center to the Pike County Correctional Facility (on April 2, 2023 in the complaint, on April 3, 2023 in the declarations) he was injured as a result of the negligence of Geo Group employees. McDougall was using a wheelchair at the time for an alleged pre-existing injury. The wheelchair belonged at the Moshannon Valley Processing Center, and the wheelchair McDougall came with to the Moshannon Valley Processing Center was somewhere "in the facility." The van, with other inmates inside, was awaiting departure for the three hour trip to Pike County. Rather than delaying the van to find plaintiff's wheelchair or transporting plaintiff using a wheelchair-accessible van, plaintiff alleges that a Lieutenant Tyson stated that "he did not care where the wheelchair was," and with two other officers attempted a lift and transfer of plaintiff to a seat in the waiting passenger van. In the process, according to plaintiff's declaration, "they dropped me on the ground and I cried out in pain." According to McDougall, corrections personnel then picked him up and took him back into the Moshannon Valley Processing Center, and several hours later transported him in a wheelchair-accessible van to Pike County. McDougall filed his complaint from Pike County, originally naming Geo

1

Group, Lieutenant Tyson, and a nurse named Freeland as defendants. Freeland's only alleged involvement was as the nurse who took McDougall's original wheelchair in August 2022. As injury, McDougall alleged in his complaint that his pre-existing injury for which he was using the wheelchair, described as a meniscus tear, "was overstressed and therefor setback [sic];" in his declaration McDougall alleged that at some point after his transfer "I seen a doctor at an emergency room where they say I have four bulging disk in my back and reinjured an ACL tier. I had to do eleven visits to a physical therapist just to get back on track [sic]."

As the record reflects, McDougall dropped Tyson and Freeland, and the matter became a consent case. GEO Group filed a motion for summary judgment in June at ECF no. 54, supported by a brief and concise statement of facts. GEO Group sought summary judgment for three reasons: 1) plaintiff Marlon McDougall failed to exhaust his administrative remedies; 2) "GEO Group, Inc." had no employees involved in the alleged injury to McDougall; 3) McDougall cannot prove any injuries were caused to him because, having retained no expert and not having responded to discovery, he literally has no evidence.

McDougall filed a motion to compel that was dated before Geo Group's motion for summary judgment, but received after it, which Geo Group replied to by explaining that the motion to compel was premature, that it had sent the discovery in timely fashion, and would send the discovery again if plaintiff should not receive it. Nothing further indicating that plaintiff did not receive the discovery, the motion to compel at ECF no. 57 is denied.

McDougall did not respond to Geo Group's motion for summary judgment. He sent in his own motion for summary judgment, ECF no. 58, which may have been intended as a response. Either way, it is only two paragraphs long. As McDougall's evidence, McDougall refers to the two declarations at ECF no. 39 and asserts that the video of the events that McDougall requested in discovery "will show" how his injuries were caused. The Geo Group responded to this motion at ECF no. 60 and ECF no. 61, repeating the themes of its original motion for summary judgment.

Geo Group's defense that McDougall failed to exhaust administrative remedies is meritless. Under the Civil Rights of Institutionalized Persons Act as amended by the Prison Litigation Reform Act, a prisoner must complete, not just begin, any available administrative remedy process in accordance with the prison's grievance policies before filing suit in federal court. See e.g. Talley v. Clark, No. 19-3797, 2024 WL 3611794 at *3 (3d Cir. Aug. 1, 2024), in which a panel of the circuit observed that:

> The PLRA, 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until**

such administrative remedies as are available are exhausted." The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits," *Spruill*, 372 F.3d at 230. The PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 93, 126 S.Ct. 2378, which means "**complet[ing]** the administrative review process in accordance with the applicable procedural rules," *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88, 126 S.Ct. 2378). The only limit on§ 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical matter. *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641–42, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016)).

Talley v. Clark, No. 19-3797, 2024 WL 3611794, at *2 (3d Cir. Aug. 1, 2024)(my emphasis). As robust a barrier as this is, it applies only to prisoners, defined in 42 U.S.C. § 1997e(h) as persons "incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." Geo Group appends the immigration detainer as if that showing of McDougall's past criminal confinement proves that he is currently a prisoner. It does not: it shows that McDougall is an immigration detainee (*see also* McDougall v. Crawford, case no. 1:24-cv-124-CMH-WEF (E.D.Va., Alexandria Division) McDougall's habeas corpus proceeding that concluded last Friday in the Eastern District of Virginia), and an immigration detainee is not a "prisoner" within the definition given in either CRIPA or the PLRA.

  Geo Group's defense that it is not vicariously liable to McDougall is based on an affidavit by an employee of Geo Group that states in relevant part that "At no time did the Geo Group have any employees at Moshannon." Geo Group does not explain its defense, but apparently the defense is that Geo Group is insulated because, due to the way it structures its divisions, subsidiaries, or holdings, it was an employee of some other entity that allegedly injured McDougall, and not an employee of Geo Group, Inc.. This is meritless.

  I note that the inmate handbook Geo Group relies on in support of its exhaustion defense is clearly marked "The Geo Group, Inc." From the fine print on some of the documents in the record it seems that Geo Group has a subsidiary called Geo Secure Services. It is possible that entity may have employed the personnel at the Moshannon Valley Processing Center. The Geo Group, Inc. website (which describes the role of Geo Secure Services and which describes the Moshannon Valley Processing Center as "a privately owned and operated secure immigration processing center ... provid[ing] support services to the Department of Homeland Security, Immigration and Customs

Enforcement on behalf of Clearfield County") also refers to its "in-house transportation division, Geo Transport Inc." Maybe that division of Geo Group, Inc. employed the personnel responsible for McDougall's transport to Pike County. I do not need to delve deeply into the question, however, because it is irrelevant. Pennsylvania tort law accepts the concept of ostensible agency as described in Section 429 of the Restatement (2d) of Torts:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

See Green v. Pennsylvania Hospital, 633 Pa. 18, 29, 123 A.3d 310, 317 (2015). Even if a prison's duty to take care in transporting inmates is not nondelegable, Geo Group certainly cannot shield itself from liability by claiming plaintiffs have failed to name its division correctly when that issue could have been and can be cured by a simple amendment to the pleading. See Fed.R.Civ.P. 15(c)(1)(C).

However, Geo Group's third basis for summary judgment is meritorious. McDougall has not responded to the motion for summary judgment. He does not dispute Geo Group's assertion that he did not respond to discovery. He offers nothing in his own motion for summary judgment but a reference to the declarations at ECF no. 39. In McDougall's declaration, he asserts that when he was at an emergency an unknown "they" said he has "four bulging disks in my back and reinjured an ACL tear." As I said at the earlier stage of this matter, whether dropping a shackled person is negligence is within the common knowledge and experience of a lay juror, but it "may be that plaintiff will need an expert to prove causation of some of his injuries." Plaintiff cannot present the hearsay diagnosis of bulging vertebral disks by an unknown "they" and is not competent to testify to the causal relationship of being dropped to those alleged bulging vertebral disks or to any reinjury of his knee.

A party is entitled to summary judgment when that party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once a movant shoulders the initial burden of demonstrating the absence of a genuine issue of material fact the burden shifts to the non-moving party who bears the burden of proof at trial to demonstrate that there is indeed a material issue of fact that precludes summary judgment. In doing so, Rule 56 requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving

party may not rest upon the allegations in the pleadings and is required to set forth "specific facts showing that there is a genuine issue for trial.' " *Id., citing* Rule 56(e). As the Supreme Court made clear, summary judgment is not a disfavored shortcut, but rather plays an indispensable role in sorting out appropriate uses of scarce judicial resources, most particularly trial time: "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323–24. Plaintiff has done nothing to assist the Court in that task.

McDougall's evidence of record, in full is the portion of his declaration stating that "they dropped me on the ground." His eyewitness states "they dropped him to the floor." That gets McDougall to trial (for nominal damages only since he has no competent evidence of any injury caused by being dropped) only if being dropped is *res ipsa loquitur* proof of negligence under Pennsylvania law. It is not. Pennsylvania has adopted the evidentiary rule of *res ipsa loquitur* as articulated in the Restatement (Second) of Torts. Cox v. Wal-Mart Stores E., L.P., 350 Fed.Appx. 741, 744 (3d Cir. 2009), *citing* D'Ardenne v. Strawbridge & Clothier, Inc., 712 A.2d 318, 321 (Pa.Super.Ct.1998). The rule is that that a plaintiff's injury may be inferred to have been caused by the defendant's negligence when "(a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." Restatement (Second) of Torts § 328D(1). Cox v. Wal-Mart Stores E., L.P., 350 Fed.Appx. at 744.

In Pennsylvania, the mere happening of an accident or an injury does not establish negligence nor raise an inference or a presumption of negligence nor make out a *prima facie* case of negligence. Chapman v. Chaon, 619 Fed.Appx. 185, 188 (3d Cir. 2015), *quoting* Amon v. Shemaka, 419 Pa. 314, 214 A.2d 238, 239 (1965). Therefore, the plaintiff "must produce evidence which would permit the conclusion that it was more probable than not the injuries were caused by [the defendant's] negligence." Chapman v. Chaon, 619 Fed.Appx. at 187, quoting Micciche v. E. Elevator Co., 435 Pa.Super. 219, 645 A.2d 278, 281 (1994). He has not done so. He says there is a video of events, but he has neither produced it nor bothered to describe its contents. Because McDougall has not come forward with evidence that would permit a jury to find in his favor on the issue of negligence, and because a jury would not be permitted to make such a finding on the basis of *res ipsa loquitur*, summary judgment is granted to Geo Group.

DATE: September 24, 2024

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

    Marlon McDougall, A# 036-708-257
    CAROLINE DETENTION FACILITY
    P.O. Box 1460
    Bowling Green, VA 22427